HAWKINS et al. v. OKLA OIL CO. et al.

(Circuit Court, E. D. Oklahoma. December 29, 1911.)

No. 1,121.

INDIANS (§ 15*)—ALLOTMENTS—HOMESTEAD RIGHTS.

Under the Original Creek Agreement (Act Cong. March 1, 1901, c. 676, 31 Stat. 861), providing for the allotment of lands among the citizens of the Creek Tribe, declaring that lands allotted shall not be alienated by the allottee before a specified period, and that each citizen shall select from his allotment 40 acres as a homestead, which shall not be alienable for an additional period, and providing that all citizens living on April 1, 1899, entitled to be enrolled, shall be placed on the rolls, and that if any such citizen has died since that time, or may subsequently die before receiving his allotment, the land shall descend to his heirs according to the laws of descent and distribution of the Creek Nation, etc., an allotment of a citizen dying in May, 1899, intestate and before selection, descends to his heirs and vests in its undivided entirety among the heirs, and a practice of the Dawes Commission in dividing an allotment into separate tracts, designating one the homestead and the other the surplus, followed by a patent of one part as a homestead, is void, and the entire allotment is within Act Cong. April 21, 1904, c. 1402, 33 Stat. 189, removing restrictions from Indian lands, and a conveyance by the heirs is valid.

[Ed. Note.—For other cases, see Indians, Cent. Dig. §§ 17, 37–44; Dec. Dig. § 15.*]

At Law. Action by Gracie Hawkins and another, guardian of Gracie Hawkins, against the Okla Oil Company and another. Judgment for defendants.

Hutchings & German, for plaintiffs.
Ramsey & Thomas, for defendants.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

CAMPBELL, District Judge. This cause is a suit by the plaintiff, as guardian of Gracie Hawkins, a minor, for the recovery of damages from the defendants for the alleged unauthorized taking of oil from a certain tract of land, in which it is alleged the said minor has an interest. The case was tried to the court, jury having been formally waived. Pursuant to ruling made at the trial, the only question now for consideration is whether or not the heirs of one Elijah Corbray, deceased, in whose name the land was originally selected (he having died in May, 1899, intestate, and before selection) had capacity after April 21, 1904, to alienate that part of the allotment set apart, allotted, and patented to the said heirs as a homestead.

The deceased and the heirs were all Creek freedmen. The land was allotted to the heirs in 1901 in two separate tracts, one as homestead and the other as surplus, and in 1904 patents were issued to the heirs, one for the surplus and one for the homestead.

If, under the circumstances of this case, there was no authority of law for allotting a separate homestead portion, and the entire allotment should have passed, and in legal effect did pass, to the heirs with the status of surplus rather than homestead land, then by the act of April 21, .1904 (chapter 1402, 33 Stat. 189) it was relieved of all restrictions, not only as to that designated surplus, but also as to that designated homestead.

It was the custom of the Commission to the Five Civilized Tribes in making these allotments to designate a certain 40 acres out of each allotment as a homestead, and to have patents issued accordingly, whether the allotment was selected during the lifetime of the member in whose name it was made, or whether it was not selected until after his death, in which case the allotment was made to the heirs. As this land was allotted in 1901, the provisions of law under which it was allotted are found in the Original Creek Agreement (chapter 676, 31 Stat. 861). The first section of this agreement defines several of the terms used. The second section provides for appraisement of the land as a basis for classification for the purpose of allotment. The third section provides that the land shall be allotted among the citizens of the tribe so as to give each an equal share of the whole in value, as nearly as may be, and in order to accomplish this it was provided that there should be allotted to each citizen 160 acres, so selected by him as to include his improvements, if any. Section 4 provided that the allotment for a minor might be selected by his father, mother, or guardian, and those for prisoners, convicts, aged, and infirm persons, by their duly appointed agents; and if incompetents, by guardians, curators, or suitable persons akin to them. Section 5 has relation to the disposition of improvements any citizen may have on lands in excess of his allotment. Section 6 confirms allotments made prior to the agreement, and authorizes the Commission to deterine controversies arising between citizens as to their right to select certain tracts of land. Section 7 provides:

"Lands allotted to citizens hereunder shall not in any manner whatsoever or at any time be incumbered, taken, or sold to secure or satisfy any debt or obligation contracted or incurred prior to the date of the deed to the allottee

therefor, and such lands shall not be alienable by the allottee or his heirs at any time before the expiration of five years from the ratification of this agreement, except with the approval of the Secretary of the Interior. Each citizen shall select from his allotment forty acres of land as a homestead, which shall be nontaxable and inalienable and free from any incumbrance whatever for twenty-one years, for which he shall have a separate deed, conditioned as above: Provided, that selections of homesteads for minors, prisoners, convicts, incompetents, and aged and infirm persons, who cannot select for themselves, may be made in the manner herein provided for the selection of their allotments; and if, for any reason, such selection be not made for any citizen it shall be the duty of said Commission to make selection for him. The homestead of each citizen shall remain, after the death of the allottee, for the use and support of children born to him after the ratification of this agreement, but if he have no such issue, then he may dispose of his homestead by will, free from limitation herein imposed, and if this be not done, the land shall descend to his heirs, according to the laws of descent and distribution of the Creek Nation, free from such limitation."

The first paragraph of the section, it appears, places a general restriction against alienation for a term of five years upon all the lands allotted to citizens under this agreement, except with the approval of the Secretary of the Interior. The second paragraph provides that each citizen shall select from *his* allotment a homestead of 40 acres, which shall be nontaxable, inalienable, and free from incumbrance for 21 years, and for which a separate patent shall issue. In case the allottee be a minor, convict, incompetent, or aged and infirm person, and therefore unable to select his own homestead, selection may be made in the manner provided in section 4 for the selection of allotments, and in case such selection be not made for any citizen, it becomes the duty of the Commission to make selection for him. The third paragraph provides for the disposition of the homestead upon the death of the allottee.

It is clear that up to this point the scheme of allotment provided contemplates that the several members of the tribe shall be alive and in being at the time the division of the lands provided for comes to be actually made. It contemplates in such instance but one allottee—not several—for each separate allotment. Up to this point, it is referred to as *his* allotment; "each citizen shall select from *his* allotment 40 acres of land as a homestead, * * * for which *he* shall have a separate deed. * * * The homestead of *each* citizen shall remain, after the death of the *allottee,* for the use of children born to *him,* * * *" etc. But if there be no such children, then *he* may dispose of *his* homestead by will, and if this be not done, the land shall descend to *his* heirs, etc. It is clear that this homestead provision contemplates a living member of the tribe, who is taking his allotment and for whose protection against his own profligacy or lack of business experience or ability in the face of the conditions surrounding him, the homestead portion is secured to him for 21 years, or for such less time as he may continue to live. Section 8 of the agreement provides how the allottee shall be placed in the possession of his allotment, and section 9 provides for the disposition of the residue of the lands after completion of the allotments, etc. Sections 10 to 22, inclusive, have reference to town sites. Section 23 provides for the issuance of patent to each individual allottee cover-

ing his allotment. Subsequent sections up to 28 have reference to matters foreign to this inquiry. Section 28 provides:

"No person, except as herein provided, shall be added to the rolls of citizenship of said tribe after the date of this agreement, and no person whomsoever shall be added to said rolls after the ratification of this agreement. All citizens who were living on the first day of April, eighteen hundred and ninety-nine, entitled to be enrolled under section twenty-one of the act of Congress approved June twenty-eighth, eighteen hundred and ninety-eight, entitled 'An act for the protection of the people of the Indian Territory, and for other purposes,' shall be placed upon the rolls to be made by said Commission under said act of Congress, and if any such citizen has died since that time, or may hereafter die, before receiving his allotment of lands and distributive share of all the funds of the tribe, the lands and money to which he would be entitled, if living, shall descend to his heirs according to the laws of descent and distribution of the Creek Nation, and be allotted and distributed to them accordingly. All children born to citizens so entitled to enrollment, up to and including the first day of July, nineteen hundred, and then living, shall be placed on the rolls made by said Commission; and if any such child die after said date, the lands and moneys to which it would be entitled, if living, shall descend to its heirs according to the laws of descent and distribution of the Creek Nation, and be allotted and distributed to them accordingly. The rolls so made by said Commission, when approved by the Secretary of the Interior, shall be the final rolls of citizenship of said tribe, upon which the allotment of all lands and the distribution of all moneys and other property of the tribe shall be made, and to no other persons."

It will be remembered that section 3 provides for the allotment of the lands among the citizens of the *tribe.* Section 28, supra, provides who shall be enrolled as citizens, and makes such roll, when completed and approved, the basis for the distribution of the tribal lands and money. But, as it was apparent that under the circumstances considerable time must be consumed in completing the roll, and more or less time must elapse after the enrollment of a member before he could make a selection of an allotment, it followed that in the nature of things some of them might die in the interim. A certain date was therefore established at which the right of a member then living, to enrollment and allotment, became fixed. If after that time, and before enrollment, any member should die, this did not affect the roll, but his name was to be placed thereon, just as if living, and the roll being the basis of allotment, there must be an allotment for every name on the roll. But an allotment could not pass to a person not in being, so that some other disposition must be made of the allotment for each enrolled member dying before selection. That contingency is covered by the provision that in such case the allotment shall descend to the heirs according to the laws of descent and distribution of the Creek Nation, and be allotted and distributed to them accordingly. In such case, of course, the one allotment of 160 acres vests jointly in its undivided entirety in as many different persons as there are heirs to take. No provision is made in such case for their joint selection out of the tract of a 40-acre homestead, and the lack of reason for and the very absurdity of such a provision is manifest from the very statement of the proposition.

The practice of the Commission, therefore, in dividing the allotment in such instances into separate tracts, designating one the homestead and the other the surplus, is, in my judgment, without reason

or authority, and the fact that it did so does not change the essential status of the land, which must be considered the same as the surplus portion of individual allotments made to living members. The act of April 21, 1904, therefore, removed the restrictions from the land involved in this case, and judgment must be rendered for the defendants.