## *BRADY v. SIZEMORE et al.

No. 1030.   Opinion Filed May 14, 1912.

Rehearing Denied June 18, 1912.

(124 Pac. 615.)

1. **INDIANS—Lands—Inheritance.** Where a duly enrolled citizen of the Creek Nation died on March 1, 1901, before receiving his allotment or a certificate of selection therefor, held, that he died seised of no estate of inheritance therein.

2. **SAME.** Where a duly enrolled citizen of the Creek Nation died on March 1, 1901, before receiving his allotment for which on August 23, 1902, certificate of selection issued to his heirs, held, that chapter 49 of Mansf. Dig. of Ark. (Ind T. Ann. St. 1899, secs. 1820-1843) governs the devolution of the allotment, as provided by the Indian Appropriation Act of May 27, 1902 (32 St. at L. 258, c. 888), and section 6 of an act of Congress approved June 30, 1902, ratified July 26, 1902 (32 St. at L. 500, c. 1323), known as the Creek Supplemental Agreement, to be applied as if deceased had received title to his allotment and died seised thereof.

(Syllabus by the Court.)

*Error from District Court, Wagoner County;*
*John. H. King, Judge.*

Action by Foil M. Brady against William Sizemore and others. Judgment for defendants, and plaintiff brings error. Reversed and remanded, with directions.

---

*Appealed to the United States Supreme Court.

*John R. Thomas* and *Grant Foreman,* for plaintiff in error.

*W. D. Halfhill,* for defendants in error.

TURNER, C. J. On December 8, 1905, plaintiff in error, Foil M. Brady, alleging himself to be the sole heir at law of Ellis Grayson, a deceased citizen of the Creek Nation, sued William Sizemore and Jeannetta Newberry, defendants in error, who claimed to be his sole heirs, in the United States Court for the Northern District of Indian Territory, sitting at Wagoner, to determine the question of heirship and which of the two contending parties was entitled to the allotment of said deceased. After reference to the master, there was trial to the court and judgment for defendants, and plaintiff brings the case here. The facts are: That Ellis Grayson, a duly enrolled citizen of the Creek Nation and, as such, entitled to an allotment, died intestate March 1, 1901, leaving surviving him neither child nor children nor their descendants, nor father nor mother, nor brother nor sister; but leaving surviving him plaintiff in error, the son of an aunt on the paternal side, and defendants in error, the children of an aunt on the maternal side; all three claimants being first cousins of the deceased. That on August 23, 1902, the Commission to the Five Civilized Tribes issued to the heirs of said Grayson a "certificate of selection" for the N. W. ¼ of the S. W. ¼ of section 13, township 17 N., range 17 E., and the S. E. ¼ of the N. W. ¼ and lots 1 and 2 of section 19, township 17 N., range 18 E., containing 163.60 acres. That on June 13, 1905, the Principal Chief of the Creek Nation delivered to plaintiff, as the heir at law of said Grayson, patents therefor which had been approved by the Secretary of the Interior and were thereafter duly recorded.

It is insisted for Brady, herein called plaintiff, that chapter 49 of Mansf. Dig. of Ark. (Ind. T. Ann. St. 1899, c. 21) is the governing statute and determines devolution, and that he, as the sole heir of the allottee, is entitled to the whole allotment. On the other hand, by defendants in error, herein called defendants, it is contended that the Creek law of descent and distribution determines the devolution, and that they, who are brother and sister,

are his "nearest relation," and as such the sole heirs of the allottee and entitled to his allotment in equal moieties. The trial court took this view, but therein was error. Having died on March 1, 1901, after enrollment (under the Curtis Act) and before receiving his allotment, it might seem, as contended, that the devolution of his allotment is governed by section 28 of the Original Agreement ratified May 25, 1901, which reads:

"All citizens who were living on the first day of April, eighteen hundred and ninety-nine, entitled to be enrolled under section twenty-one of the act of Congress approved June twenty-eighth, eighteen hundred and ninety-eight, entitled 'An act for the protection of the people of the Indian Territory, and for other purposes,' shall be placed upon the rolls to be made by said commission under said act of Congress, and if any such citizen has died since that time, or may hereafter die, before receiving his allotment of lands and distributive share of all funds of the tribe, the lands and money to which he would be entitled, if living, shall descend to his heirs according to the laws of descent and distribution of the Creek Nation, and be allotted and distributed to them accordingly." (Act March 1, 1901, c. 676, 31 St. at L. 870.)

—and that such would be in keeping with *Sanders v. Sanders et al.*, 28 Okla. 59, 117 Pac. 338. Not so. In that case where a duly enrolled citizen of the Creek Nation was in possession of and had filed upon her allotment pursuant to the Curtis Act approved June 28, 1898 (Act June 28, 1898, c. 517, 30 St. at L. 495), and died April 28, 1900, without receiving her certificate of allotment, we held that she died seised of no inheritable estate, and that her certificate having issued May 24, 1901, or prior to the ratification of the Supplemental Agreement, said allotment descended according to the laws of descent and distribution of the Creek Nation. And we might so hold here, but for the fact that not only at the time said act was ratified, no selection of his allotment having been made, Grayson died seised of no inheritable estate or vested right in said allotment, and therefore had no allotment upon which said section 28 could operate, but for the further fact, not appearing in the Sanders case, that such was true until August 23, 1902, which was after ratification of the Supplemental Agreement, when his allotment was selected and certificate of selection therefor, on said date, issued to his heirs.

Then, and not until then, did any law of descent and distribution take hold of the then created *res* and determine its devolution.

Whether the Indian appropriation act passed by Congress May 27, 1902 (Act May 27, 1902, c. 888, 32 St. at L. 258), which took effect by virtue of a joint resolution July 1, 1902, repealed the provisions of said Original Agreement in so far as it provided for descent and distribution according to the Creek law and substituted therefor chapter 49 of Mansf. Dig. of Ark., we need not say, for, if not, section 6 of the Supplemental Agreement approved June 30, 1902, ratified July 26, 1902 (Act June 30, 1902, c. 1323, 32 St. at L. 500), did that very thing. Section 6 of said Supplemental Agreement provides:

"The provisions of the act of Congress approved March 1, 1901 (31 St. at L. 861), in so far as they provide for descent and distribution according to the laws of the Creek Nation, are hereby repealed, and the descent and distribution of land and money provided for by said act shall be in accordance with chapter 49 of Mansf. Dig. of Ark., now in force in Indian Territory * * *"

—which said chapter 49, being the law of descent and distribution in force at the date of the allottee's certificate, we hold to be the governing statute here; the same to be applied as if the deceased had received title to his allotment and died seised thereof. *Barnett et al. v. Way et al.*, 29 Okla. 780, 119 Pac. 418.

This is in keeping with what we held in *Hooks et al. v. Kennard et al.*, 28 Okla. 457, 114 Pac. 744. There the three allottees, whose estates were involved, were enrolled under section 28 of the Original Agreement ratified May 25, 1901, and lands were allotted to them and in their names prior to said Supplemental Agreement. One died prior to the ratification of the Supplemental Agreement—patents thereafter issued. On this state of facts, the question was: Which law governed the devolution of the estate, the law in force at the date of their certificates, or the law in force at the date of their patents? The court held the same to be the former, which was the Creek law, directed to apply by section 28 of the Original Agreement. This for the reason, we take it, that upon the issuance of certificates and not before, did there come into being an estate capable of descending,

and that then said section for the first time had a subject-matter upon which to operate. What we would hold if, prior to the ratification of said Supplemental Agreement and the consequent operation of said section 6, which in terms repealed the provisions of the Original Agreement in so far as the same provided for descent and distribution of the Creek Nation and substituted therefor the laws of descent and distribution contained in chapter 49 of Mansf. Dig. of Ark., rights had vested in virtue of that part of the act repealed, we need not state. It is sufficient to say that no such question is here presented, and no rights having thus accrued, Congress, prior thereto, had a right to change the legislative intent and make other provision regarding those allotments, which it did by enacting section 6, changing the course of their devolution, and provide, in effect, as it did that the laws of Arkansas should thereto apply instead of the laws of the Creek Nation.

Having held that the laws of Arkansas, *supra,* govern the devolution, there being no question of Brady's right to take thereunder, the judgment of the trial court is reversed and remanded, with directions to enter judgment in accordance with this opinion.

All the Justices concur.