## IOWA LAND & TRUST CO. *et al.* v. DAWSON.

No. 2770    Opinion Filed June 11, 1913.

(134 Pac. 39.)

1. **INDIANS—Allotment—Descent.** Minnie Hawkins was born March 19, 1901, and died March 2, 1902, unmarried, without issue and intestate; she was enrolled as a Creek freedman; an allotment was selected for her, the patent to the homestead portion thereof being executed January 28, 1904, and to the surplus portion January 20, 1904. Her father was a Seminole and a noncitizen of the Creek Nation. Her mother died May 6, 1904, leaving as her sole heirs her father, mother, four sisters, and one brother (they being, respectively, grandfather, grandmother, aunts, and uncle of said allottee). **Held,** that by virtue of the provisions of sections 7 and 8 of the Supplemental Creek Treaty (Act June 30, 1902, c. 1322, 32 St. at L. 500), her allotment passed to the aforesaid heirs of her mother, to the exclusion of her father, and that the devolution of her estate was governed by chapter 49, Mansf. Dig. of Ark.

2. **SAME—Alienation of Allotment—Removal of Restrictions.** Act of Congress, approved April 21, 1904, c. 1402 (33 St. at L. 189), removed all restrictions on the allotment of Minnie Hawkins, mentioned in the foregoing paragraph, and her heirs could convey good title thereto after the passage of said act; notwithstanding the provisions of section 16 of the Supplemental Creek Agreement, **supra.**

3. **INFANTS—Actions—Process—Waiver of Service.** An infant cannot waive issuance and service of summons in an action against him, nor can any person, not even his guardian, do so for him.

4. **SAME—Guardian ad Litem—Duties.** It is the duty of a guardian ad litem to plead and urge before the court every defense available, under the law, for his ward.

(Syllabus by Robertson, C.)

*Error from District Court, Tulsa County;*
*L. M. Poe, Judge.*

Action by Thomas J. Dawson against the Iowa Land & Trust Company and others, to quiet title to real estate. Judgment for plaintiff, and defendants bring error. Reversed.

This was an action to quiet title to a certain tract of land described as the southeast quarter of section 22, township 18

Vol. 37—38.

north, range 13 east, in Tulsa couny, Okla., by Thomas J. Dawson, as plaintiff, against the Iowa Land & Trust Co., a corporation, Willie Hawkins, W. F. Moffatt, Lee Peters, Maria Hawkins, E. S. Warner, Andrew Peters, Dorcas Peters, Minnie Peters Yokley, Johnnie Peters, a minor, Delilah Hawkins, Frank Hawkins, Mary Hawkins, and J. C. Creekmore. Judgment was entered in the lower court in favor of the plaintiff and against the defendants, and the Iowa Land & Trust Co., E. S. Warner, and J. C. Creekmore appeal. Dawson will be referred to herein as the plaintiff, and the other parties as the defendants.

In his petition the plaintiff alleges substantially that he was seised in fee simple of the entire estate in the lands above described; that the same was originally allotted to one Minnie Hawkins, who in her lifetime was a freedman citizen of the Creek Tribe of Indians; that she was born on March 19, 1901, and died March 2, 1902; that after her death, by the supplementary agreement made and entered into by the Commissioners to the Five Civilized Tribes of Indians and the Creek Nation, approved June 30, 1902, it was provided, in section 7, thereof that: .

"All children born to those citizens who are entitled to be enrolled under previous acts subsequent to July 1, 1900, and including May 25, 1901, and living upon the latter date, will be placed upon the roll."

, Said act further provided that:

"And if any such child has died since May 25, 1901, or may hereafter die before receiving his allotment of lands, and distributive share of the funds of the tribe, the lands and moneys to which he may be entitled if living, shall descend to his heirs as herein provided and be allotted to them accordingly."

Plaintiff alleges, also, that the phrase, "as herein provided" refers to chapter 49 of Mansf. Dig. of the Statutes of Arkansas.

It is further alleged: That Eliza Hawkins was the mother of Minnie Hawkins, and that she was a freedman citizen of the Creek Tribe of Indians, enrolled under her maiden name of Eliza Peters. That the father of said Minnie Hawkins was Willie Hawkins, who was a noncitizen of the Creek Nation, and

a citizen of the Seminole Tribe of Indians, and that the said Eliza Hawkins and the said Willie Hawkins were, at the time of the birth of Minnie Hawkins, duly and legally married and living together as husband and wife. That thereafter and on May 6, 1904, Eliza Hawkins died intestate, leaving surviving her her said husband Willie Hawkins, a noncitizen of the Creek Tribe, as aforesaid, and who, as such, did not inherit from the said Eliza Hawkins, and left surviving her, as her heirs at law, Andrew Peters, her father; Dorcas Peters, her mother; Minnie Peters, her sister; Hattie Peters, her sister; Jane Peters, her sister; Sarah Peters, her sister; Lee Peters, her brother; and John Peters, a minor, the son of John Peters, deceased, who was a brother of said Eliza Hawkins. And that thereafter the aforesaid Hattie Peters, Jane Peters, and Sarah Peters departed this life unmarried, intestate, and without issue. That thereafter the said Willie Hawkins, on May 17, 1906, executed a conveyance of the land in controversy to R. J. Dickson. That thereafter said R. J. Dickson conveyed the same to John W. McElroy, trustee, and that thereafter the said John W. McElroy, trustee, conveyed the same to plaintiff. That thereafter on October 6, 1909, the said Willie Hawkins executed a warranty deed conveying said land to plaintiff. That thereafter on January 14, 1911, Deliah Hawkins, Frank Hawkins, and Mary Hawkins executed and delivered to Willie Hawkins their quitclaim deed to said property. That on December 30, 1909, the said Andrew Peters, Dorcas Peters, and Minnie Yokley, formerly Minnie Peters, executed and delivered a warranty deed conveying said land to plaintiff. That before the institution of this action plaintiff and his grantees were in the open, notorious, and peaceful possession of said land, and alleged that the defendants were claiming some right or title therein, and asks that they be compelled to set up the nature of their claim, and that on consideration thereof by the court the same be canceled and plaintiff's title quieted against all of them.

The Iowa Land & Trust Co., E. S. Warner, and J. C. Creekmore, defendants, answered by joint and separate answers,

in which they denied that the plaintiff was seised of the title of property, but admitted that Minnie Hawkins in her lifetime was a freedman citizen of the Creek Tribe of Indians; that she was born in March, 1901, and died on March 2, 1902, admitted that, by virtue of the supplementary agreement, *supra,* the lands of· that class of persons to which she belonged descended to her heirs according to the laws of descent and distribution of chapter 45 of Mansf. Dig. of Ark. They further answered that Eliza Hawkins was the mother of Minnie Hawkins, and that she was a freedman citizen of said tribe, and that the father of said Minnie Hawkins was the said Willie ·Hawkins, and that he was a noncitizen of said Creek Nation, and therefore could not inherit the lands in question or the property of his wife after her death. They also admitted that the· father and mother of Minnie Hawkins, at the time of her death, were duly married and living together as husband and wife, and that the mother, Eliza Hawkins, died intestate on May 6, 1904, and also in said answer alleged that her husband, Willie Hawkins, prior to her death, and on February 14, 1903, had been divorced from her. They further admitted that the said Eliza Hawkins, mother of Minnie Hawkins, left surviving her as her heirs at law Andrew Peters, her father; Dorcas Peters, her mother; Minnie Peters, Hattie Peters, Jane Peters, and Sarah Peters, her sister; and Lee Peters, her brother—and that the said Hattie Peters, Jane Peters, and Sarah Peters had since departed this life unmarried, without issue and intestate.

Further answering, they denied the execution of the various conveyances set up by plaintiff in his chain of title, and averred that, even if they were executed as alleged, they conveyed no title to the plaintiff, for the reason that each of the grantors, long prior thereto, had conveyed their interests to the defendants, the Iowa Land & Trust Co., and E. S. Warner, and denied that plaintiff or his grantees were, or had been, at the time of the institution of this action, in the open, notorious, peaceful possession of said premises, and alleged that they themselves were in possession thereof in the person of their tenant and codefend-

ant J. C. Creekmore, and also charge that the only interest that Creekmore had in such property was by virtue of the agricultural lease from his codefendants. Defendants further charge in their answer that at the time of the death of Minnie Hawkins she left surviving her, as her sole heir at law, her mother, Eliza Hawkins; that at the death of the said Eliza Hawkins the entire allotment of the said Minnie Hawkins, which the mother took by inheritance, passed to the mother's heirs, viz., her father and mother, Andrew Peters and Dorcas Peters, and to her sisters and brothers, Hattie, Jane, Sarah, Minnie, and Lee Peters, and that they therefore were the owners of all the interest of all of the heirs in said allotment, by virtue of a warranty deed executed on September 24, 1904, to the Iowa Land & Trust Co., by the said Andrew Peters, Dorcas Peters, father and mother of Eliza Hawkins, and Minnie Peters and Hattie Peters, her sisters, and by warranty deed dated May 28, 1906, by Lee Peters, her brother, and by warranty deed dated October 2, 1907, by Jane Peters, her sister, to Chas. F. Runyan, and by his quitclaim deed, on March 23, 1909, to E. S. Warner defendant; that some time in March, 1908, the said Sarah Peters departed this life intestate, unmarried, and without issue, and that all of her interest in said lands passed, at the time of her death, to the other heirs of Minnie Hawkins, her niece, and Eliza Hawkins, her sister, and that by virtue of the warranties in said various deeds, executed by the aforesaid parties to these defendants, the interests of the said Sarah Peters thereby passed to those defendants, and if the said Willie Hawkins possessed any interest in said land, it was conveyed to these defendants by warranty deed executed by him on September 1, 1904, to W. F. Moffatt, trustee, and thereafter by said Moffatt to the Iowa Land & Trust Co., under date of March 5, 1906, and that by said chain of conveyance the said the Iowa Land & Trust Co. and E. S. Warner became the owners in fee of said land, and prayed that they be decreed to be the owners of said property, and that all the other instruments

outstanding against them should by the court be cancelled as clouds upon their title.

On July 14, 1910, the defendant Johnnie Peters, a minor, by his guardian *ad litem,* W. F. Aby, filed his answer, which was a general denial; thereafter the defendants C. F. Runyan, Willie Hawkins, Delilah Hawkins, and Mary Hawkins entered their general appearance in said action, and disclaimed any right, title or interest in or to the subject-matter of the controversy. The other defendants were, in due time, all adjudged to be in default.

The plaintiff thereafter replied by general denial to all of the affirmative allegations of said answers. The cause was tried to the court without the intervention of a jury on July 14, 1910, and taken under advisement until December 30, 1910, at which time a decree was entered, finding the issues in favor of the plaintiff, and against the defendants and vesting the absolute title to said lands in plaintiff, and quieting the same as against any claim of any of the defendants. Motion for new trial was duly filed, considered, and overruled, and the defendants the Iowa Land & Trust Co., E. S. Warner, and J. C. Creekmore prosecute this appeal to reverse the judgment so entered.

*C. F. Runyan,* for plaintiffs in error.
*Hainer, Martin, Bush & Murray* for defendant in error.

Opinion by ROBERTSON, C. (after stating the facts as above). Counsel for defendant in error, by motion to dismiss, challenges the jurisdiction of this court to hear and determine this controversy, for that Willie Hawkins, Andrew Peters, Dorcas Peters, Minnie Peters Yokley, and Johnnie Peters, a minor, are necessary parties to this appeal, whose interests would be injuriously affected by a reversal or modification of the judgment of the lower court, and have not been made defendants in error, nor have they been served with the case-made herein, as required by law. The determination of this question must necessarily be deferred until the facts of the case, as disclosed

by the record, have been examined and considered under the law applicable thereto.

The determination of the questions herein involved requires that the status of the land and the character of the estate of Minnie Hawkins be first established. The record shows that Minnie Hawkins was born on March 19, 1901, and died unmarried, intestate, and without issue on March 2, 1902; that she was duly enrolled as a Creek freedman; that the patent to the homestead portion of said allotment was executed and delivered on January 28, 1904, and to the surplus portion on January 20, 1904. Her father was a noncitizen of the Creek Nation, and her mother, Eliza Hawkins, died May 6, 1904, leaving as her sole heirs Andrew Peters, her father; Dorcas Peters, her mother; Hattie, Minnie, Jane, and Sarah Peters her sisters; and Lee Peters, her brother. There is some contention that one of the defendants, Johnnie Peters, a minor, and nephew of Eliza Hawkins, also survived her, but we will consider this hereafter, and it need not therefore be now inquired about.

Sections 7 and 8 of the Supplemental Creek Agreement (32 St. at L. 500) reads as follows:

"All children born to those citizens who are entitled to enrollment as provided by the Act of Congress approved March 1, 1901, (31 St. at L. 861), subsequent to July 1, 1900, and up to and including May 25, 1901, and living upon the latter date, shall be placed on the rolls made by said Commission. And if any such child has died since May 25, 1901, or may hereafter die before receiving his allotment of lands and distributive share of the funds of the tribe, the lands and moneys to which he would be entitled if living shall descend to his heirs, as herein provided, and be allotted and distributed to them accordingly.

"All children who have not heretofore been listed for enrollment living May 25, 1901, born to citizens whose names appear upon the authenticated rolls of 1890 or upon the authenticated rolls of 1895 and entitled to enrollment as provided by the Act of Congress approved March 1, 1901 (31 St. at L. 861), shall be placed on the rolls made by said Commission. And if any such child has died since May 25, 1901, or may hereafter die, before receiving his allotment of lands and distributive

share of the funds of the tribe, the lands and moneys to which he would be entitled if living shall descend to his heirs as herein provided and be allotted and distributed to them accordingly."

Section 6, of the said Supplemental Agreement, fixing the rule of descent and distribution as to the class of persons designated in sections 7 and 8, *supra,* and thereby applicable to the estate herein reads:

"The provisions of the Act of Congress approved March 1, 1901 (31 St. at L. 861), in so far as they provide for descent and distribution according to the laws of the Creek Nation, are hereby repealed and the descent and distribution of land and money provided for by said act shall be in accordance with chapter 49 of Mansfield's Digest of the Statutes of Arkansas now in force in Indian Territory: Provided, that only citizens of the Creek Nation, male and female, and their Creek descendants shall inherit lands of the Creek Nation: And provided further, that if there be no person of Creek citizenship to take the descent and distribution of said estate, then the inheritance shall go to noncitizen heirs in the order named in said chapter 49."

The law of descent and distribution of the state of Arkansas, as embodied in chapter 49, Mansf. Dig. of Ark. and which governed the devolution of this estate, is as follows:

"When any person shall die, having title to any real estate of inheritance, or personal estate (b), not disposed of, nor otherwise limited by marriage settlement, and shall be intestate as to such estate, it shall descend and be distributed, in parcenary, to his kindred, male and female, subject to the payment of his debts and the widow's dower, in the following manner:

"First. To children, or their descendents, in equal parts.

"Second. If there be no children, then to the father, then to the mother; if no mother, then to the brothers and sisters, or their descendants, in equal parts.

"Third. If there be no children, nor their descendants, father, mother, brothers or sisters, nor their descendents, then to the grandfather, grandmother, uncles and aunts and their descendants, in equal parts, and so on in other cases, without end, passing to the nearest lineal ancestor, and their children and their descendants, in equal parts." (Section 2522.)

"In cases where the intestate shall die without descendants, if the estate come by the father, then it shall ascend to the father and his heirs; if by the mother, the estate, or so much thereof as came by the mother, shall ascend to the mother and her heirs; but if the estate be a new acquisition, it shall ascend to the father for his lifetime, and then descend, in remainder, to the collateral kindred of the intestate in the manner provided in this act; and, in default of a father, then to the mother, for her lifetime; then to descend to the collateral heirs as before provided (d)." (Section 2531.)

"The estate of an intestate, in default of a father and mother, shall go, first, to the brothers and sisters, and their descendants, of the father; next, to the brothers and sisters, and their descendants, of the mother. This provision applies only where there are no kindred, either lineal or collateral, who stand in a nearer relation." (Section 2532.)

The father, Willie Hawkins, being a noncitizen of the Creek Nation, under the foregoing law (Supplemental Creek Agreement, *supra*) did not inherit from his wife; hence it follows that Eliza (Peters) Hawkins, the mother of Minnie Hawkins, deceased, had she not died (May 6, 1904), would have inherited the entire estate, but she having died as aforesaid, the same went to her heirs, in accordance with the provisions of section 2531, c. 49, Mansf. Dig., as above set out. Hence it becomes necessary to ascertain who were the heirs of Eliza (Peters) Hawkins, the mother of Minnie Hawkins, the allottee.

The parties to this appeal practically agree on this proposition, and from the record and these agreements we conclude that the heirs of Eliza (Peters) Hawkins, the mother of Minnie Hawkins, are: Andrew Peters, her father; Dorcas Peters, her mother; Hattie Peters, Jane Peters and Sarah Peters, her sisters; and Lee Peters, her brother. Plaintiff in his petition alleged that Johnnie Peters, a minor, the son of John Peters, another brother, deceased, was also an heir, but the trial court, from the evidence, evidently found that this allegation of the petition was not sustained, and (in effect) denied by its general finding the claimed kinship. Johnnie Peters was represented at the hearing by H. T. Aby, as guardian *ad litem*, and filed a gen-

eral denial. The record does not show why he was appointed, nor when; neither does it show at whose suggestion he was appointed as such guardian, nor is there any order of the court in the record appointing him, nor was there ever any summons issued or served upon him. The only thing in the case-made is a general denial signed by Mr. Aby as guardian *ad litem,* and this is insufficient, in itself, to confer jurisdiction of the court over his person.

In *Bolling v. Campbell,* 36 Okla. 671, 128 Pac. 1091, it was held that:

"An infant cannot waive the issuance and service of summons; nor can any person, not even his guardian, do so for him."

It is also in that case held to be the duty of a guardian *ad litem* to plead and urge before the court every defense available, under the law, for his ward. The record is silent as to any attempt, by plea or proof, to show the relationship of the said Johnnie Peters to any of the parties to this action, except the testimony of Willie Hawkins, which is so very unsatisfactory as to afford no real proof of a matter of such importance. That there is such a person as Johnnie Peters, and that he was a minor, all admit, and the only testimony in the record (that of Willie Hawkins) tends to show that he is in fact an heir of Eliza Hawkins. But, whether he was or was not an heir of Eliza Hawkins, it appears certain that he was not legally before the court, and any judgment rendered against him would be null and void and of no force or effect. Hence it follows that he was not a necessary party to this appeal, for the all-sufficient reason that he was not a party to the action in the lower court. *State ex rel. Hankins v. Holt,* 34 Okla. 314, 125 Pac. 460; *Board v. Harvey,* 5 Okla. 468, 49 Pac. 1006.

The record also further shows that, of the other heirs above named, Hattie Peters, Jane Peters, and Sarah Peters, sisters of Eliza (Peters) Hawkins, all died unmarried, without issue, and intestate before the filing of this suit in the lower court, and it therefore necessarily follows that the other surviving heirs

took their entire interests, and consequently their death could not in any manner affect the result of this litigation.

The defendants claim that Jane Peters, on October 2, 1907, executed a deed to her share of the estate to Chas. F. Runyan, but plaintiffs objected to the introduction of this deed in evidence, on the grounds that at the date of its execution Jane Peters was a minor, under the age of eighteen years, and that the same was therefore void, and attempted to introduce in evidence, as proof of such fact, a certified copy of the Creek freedman roll, which was denied admission by the court. This ruling of the court was error. Such evidence was competent for the purpose for which it was offered. *Bell v. Cook* (C. C.) 192 Fed. 597; *Yarbrough v. Spalding et al.,* 31 Okla. 806, 123 Pac. 843; *Lawless v. Raddis,* 36 Okla. 616, 129 Pac. 711. This enrollment card shows that Jane Peters at the time she executed the deed to Runyan (October 2, 1907) was not eighteen years of age. She would not have attained that age until August, 1908, and it necessarily follows that such conveyance was absolutely void. *Jefferson v. Winkler,* 26 Okla. 653, 110 Pac. 755; *Gill v. Haggerty, ante,* 32 Okla. 407, 122 Pac. 641; *Bruner et ux. v. Cobb, ante,* 131 Pac. 165.

With the foregoing exceptions, it appears that the defendant the Iowa Land & Trust Co. is the holder of record title by deeds from all the other heirs of Eliza (Peters) Hawkins. It is also apparent that plaintiff has a similar claim to title except that his deeds are dated subsequent to the deeds relied upon by defendant, and this brings up the principal question in the case, *i. e.,* Was the land in controversy alienable at the time the first deeds were executed by the heirs, as aforesaid, to the defendant?

Plaintiff contends that by virtue of section 16 of the Supplemental Creek Agreement (32 St. at L. 500), *supra* the land was burdened with restrictions, and could not be alienated. Said section reads as follows:

"Lands allotted to citizens shall not in any manner whatever or at any time be incumbered, taken, or sold to secure or

satisfy any debt or obligation nor be alienated by the allottee or his heirs before the expiration of five years from the date of the approval of this Supplemental Agreement, except with the approval of the Secretary of the Interior. Each citizen shall select from his allotment forty acres of land, or a quarter of a quarter section, as a homestead, which shall be and remain nontaxable, inalienable, and free from any incumbrance whatever for twenty-one years from the date of the deed therefor, and a separate deed shall be issued to each allottee for his homestead, in which this condition shall appear. Selections of homesteads for minors, prisoners, convicts, incompetents and aged and infirm persons, who cannot select for themselves, may be made in the manner provided for the selection of their allotments, and if for any reason such selection be not made for any citizen it shall be the duty of said Commission to make selection for him. The homestead of each citizen shall remain, after the death of the allottee, for the use and support of children born to him after May 25, 1901, but if he have no such issue then he may dispose of his homestead by will; free from the limitation herein imposed, and if this be not done the land embraced in his homestead shall descend to his heirs, free from such limitation, according to the laws of descent herein otherwise prescribed. Any agreement of conveyance of any kind or character violative of any of the provisions of this paragraph shall be absolutely void and not susceptible of ratification in any manner, and no rule of estoppel shall ever prevent the assertion of its validity."

Defendants insist that the 21 years' restriction against alienation, so far as the homestead portion of said land is concerned, expired at the death of Minnie Hawkins, the allottee, so called, and that as she had died without issue after May 25, 1901, the homestead portion of her allotment passed, without further formality, to her heirs, free from the burden of restrictions, and that the only restrictions remaining on said land after her death was the five-year period of limitation upon alienation of the surplus, which would date from August 8, 1902, the date of the taking effect of the Supplemental Agreement, and which would expire on August 8, 1907, had not Congress interfered by the passage of Act April 21, 1904, c. 1402, 33 St. at L. 189, a portion of which reads as follows:

"And all restrictions upon the alienation of lands of all allottees of either of the Five Civilized Tribes of Indians who are not of Indian blood, except minors, are, except as to homesteads, hereby removed. * * * *"

Defendants claim that the last-named act of Congress removed absolutely all the restrictions on this tract of land, and that the heirs of Eliza (Peters) Hawkins could and did convey good title thereto after its passage on April 21, 1904. This contention is sound. It has been repeatedly so held, not only by this court, but by the Supreme Court of the United States. In this connection, and as supporting this view, see *de Graffenried et al. v. Iowa Land & Trust Co.,* 20 Okla. 687, 95 Pac. 624; *Hawkins v. Okla. Oil Co.* (C. C.) 195 Fed. 345; *Hancock v. Mutual Trust Co.,* 24 Okla. 391, 103 Pac. 566; *Mullen et al. v. U. S.,* 224 U. S. 448, 32 Sup. Ct. 494, 56 L. Ed. 834; *Parkinson v. Skelton,* 33 Okla. 813, 128 Pac. 131; *Rentie v. McCoy,* 35 Okla. 77, 128 Pac. 244; *U. S. v. Jacobs,* 195 Fed. 707, 115 C. C. A. 507; *Deming Inv. Co. v. Bruner Oil Co.,* 35 Okla. 197, 130 Pac. 1159; *McNac v. Jones,* 132 Pac. 1088, not yet officially reported.

It therefore follows, from a consideration of the foregoing facts and authorities, that Willie Hawkins, the noncitizen husband of Eliza Hawkins, Andrew Peters, Dorcas Peters, and Minnie Peters Yokley, who were parties defendant in the lower court, and Johnnie Peters, minor, who was not a party below, are not necessary parties to this appeal, inasmuch as their interests cannot be prejudicially affected by the reversal or modification of the judgment of the lower court, and that the motion to dismiss this appeal should be overruled.

As to Johnnie Peters, minor, he not having been before the lower court, and, no jurisdiction over his person ever having been acquired, any purported judgment rendered against him is necessarily wholly null and void.

Having reached these conclusions, it follows that the judgment of the lower court should be reversed, and the cause remanded, with instructions to enter judgment for plaintiffs in

error in accordance with the prayer of their answer and cross-petition. Provided that no judgment shall be entered against Johnnie Peters, minor.

By the Court: It is so ordered.