**McDONALD et al. v. RALSTON et al.**

No. 7548—Opinion Filed June 27, 1916.

Rehearing Denied July 10, 1917.

(166 Pac. 405.)

**1. Indians—Allotted Lands—Inheritance—What Law Governs.**

If a Creek citizen dies before receiving his allotment, at the time of his death he is not seised of an inheritable estate in lands afterwards allotted to him or to his heirs, and the descent of such allotment is cast at the time the certificate of allotment is issued, and the law in effect at that particular time governs in the devolution of said allotted lands.

**2. Same.**

The first proviso in section 6 of the Supplemental Creek Treaty (Act June 30, 1902, c. 1323, 32 Stat. L. 500), which provides that only citizens of the Creek Nation and their Creek descendants shall inherit lands of the Creek Nation, was not repealed by the Enabling Act or the Constitution, and now remains in full force and effect, and operates upon the laws of descent and distribution of Oklahoma to the extent of limiting the inheritance of lands in the Creek Nation to Creek citizens and their descendants. Neither was the second proviso in said section 6 repealed.

**3. Same.**

Neither section 5 of an act of Congress approved April 26, 1906 (34 Stat. L. 137, c. 1876), nor section 32 of an act of Congress approved June 25, 1910 (36 Stat. L. 855, c. 431), operates or was intended to govern the devolution of allotted lands of deceased Indians belonging to the Five Civilized Tribes, but they have for their object the providing of a uniform method and procedure for issuing deeds and patents to the allotments of such deceased Indians.

(Syllabus by Mathews, C.)

Error from District Court, Creek County; Ernest B. Hughes, Judge.

Action by John F. Ralston against Florence McDonald, A. D. McDonell, and F. A. Rittenhouse. Judgment for plaintiff, and the defendants McDonald and Rittenhouse bring error. Affirmed.

F. A. Rittenhouse, for plaintiffs in error.

McDougal & Lytle and Ransom & Smith, for defendant in error.

Opinion by MATHEWS, C. This is an action to determine conflicting claims to the allotment of a deceased minor Creek citizen. The case was submitted in the trial court upon the following agreed statement of facts:

"It is hereby stipulated and agreed by and between the parties hereto, by their respective attorneys, that the facts in the above case are as follows, to wit:

"First. That the plaintiff John Ralston, and the defendant Florence McDonald were in the year 1900, and prior thereto, husband and wife; that they were married on the 14th day of June, 1897; and that there was born to them in wedlock Nancy Jane Ralston.

"Second. That Nancy Jane Ralston was born in May, 1900, and died on or about the 1st day of August, 1900.

"Third. That Nancy Jane Ralston was duly enrolled as a citizen of the Muskogee (Creek) Nation, and that her roll number is 10166; that her citizenship certificate was issued to her on the 2d day of April, 1907. Certificate of selection of allotment was issued January 2, 1908.

"Fourth. That Nancy Jane Ralston was duly allotted 160 acres of land, described as follows: Northeast quarter of section 16 in township 16 north, range 10 east—and that allotment deed for 120 acres thereof was issued to her on April 8, 1909; that same approved May 14, 1909; that homestead deed for 40 acres thereof was issued to her on the 8th day of April, 1909; and that same was approved May 14, 1909.

"Fifth. That the plaintiff claims said property as sole heir; that under the Supplemental Creek Treaty the laws of descent and distribution of the state of Arkansas apply, and are as follows:

" 'When any person shall die, having title to any real estate of inheritance, or personal estate, not disposed of, or otherwise limited by marriage settlement, and shall be intestate as to such estate, it shall descend and be distributed, in parcenary, to his kindred, male and female, subject to the payment of his debts and the widow's dower, in the following manner:

" 'First. To children, or their descendants, in equal parts.

" 'Second. If there be no children, then to the father, then to the mother; if no mother, then to the brothers and sisters, or their descendants, in equal parts.'

"Sixth. That the defendants claim that the plaintiff does not inherit any of said property, and that the law of descent and distribution of the Creek Nation apply; that under the original Creek Treaty the laws of descent and distribution of the Creek Nation apply and are as follows: "Be it further enacted, that if any person die without a will, having property and children, the property shall be equally divided among the children, by disinterested persons; and in all cases where there are no children. the nearest relation shall inherit the property.' Defendants also claim that if said law does not apply that the laws of descent and distribution of the state of Oklahoma apply.

"Seventh. That the plaintiff is enrolled as a member of the Creek Nation as being one-half Indian blood, and is No. 10157 on the rolls: that Florence McDonald, formerly Florence Ralston, is a noncitizen: that Nancy Jane Ralston was enrolled as one-eighth Indian blood.

"Eighth. That the defendant F. A. Rittenhouse claims by warranty deed a one-half interest in and to said property from defendant Florence McDonald; that the defendant A. D. McDonell claims under an oil and gas lease from Florence McDonald, and that the defendant Florence McDonald claims the other half of said property as heir of Nancy Jane Ralston; that said deed and said oil and gas lease are as set out in the pleadings."

The trial court found for the plaintiff, and the defendants Florence McDonald and F. A. Rittenhouse appeal, and they will be here referred to as defendants, and the said Ralston as plaintiff; the said McDonald, not appealing, passes out of the case.

The questions presented for our consideration are: (1) When was the descent of the allotted lands of the said Nancy Jane Ralston cast? and (2) What law governed in its devolution?

In the case of McKee v. Henry, 201 Fed. 74, 119 C. C. A. 412, we find the following facts presented: A man not of Creek blood married a Creek woman. They had two sons at the time of the death of the wife. One of the sons was born in January, 1899, and died in November of the same year. In November, 1902, there was allotted to the deceased child a tract of land in the Creek Nation, and the deed was executed to his heirs. The legal question which arose was: Who took the title to the land, the father or the surviving brother? At the time of his death in 1899 the Creek law was in force, and if that law controlled in the devolution the brother would have inherited. At the time the certificate of allotment was issued in November, 1902, by virtue of the Supplemental Creek Agreement (32 Stat. 500) effective August 8, 1902, chapter 49, Mansfield's Digest of the Statutes of Arkansas, governed in the descent and distribution of estates in the Creek Nation, and under this law the father was the sole heir. The court, speaking through Smith, Circuit Judge, held as follows:

"In Woodbury v. United States, 170 Fed. 302, 95 C. C. A. 498, this court characterized the right of an Indian after his enrollment, but before allotment, as 'a mere float, giving him no right to any specific property.' When the allotment was made for the first time the rights of any individual vested, and the title became vested in the one at that time fixed by the law, and it makes no difference what previous laws may have provided. In the conclusion we have reached we find that we are in harmony with the Supreme Court of Oklahoma. Brady v. Sizemore [33 Okla. 169] 124 Pac. 615; Shellenbarger v. Fewel [34 Okla. 79] 124 Pac. 617. While our conclusion has been reached upon the authority of the Supreme Court of the United States, of this court, and what seems to us sound reason, it is gratifying to find that there is uniformity in the decisions of the state courts and this court. At any time after enrollment, and before allotment, Congress could have repealed all legislation providing for allotment, and have restored the old system of tribal control: and, if this is true, manifestly no inheritable interest vested in any one until allotment."

The case of Sizemore v. Brady, 235 U. S. 441, 35 Sup. Ct. 135, 59 L. Ed. 308, presents an appeal from the Supreme Court of this state (33 Okla. 169, 124 Pac. 615) and the facts were as follows: A Creek citizen died, unmarried, on March 1. 1901, before selecting allotment, leaving as his only surviving relatives three first cousins, one on the paternal and two on the maternal side, all being Creek citizens. The allotment was selected after August 8, 1902. If the Creek law governed in the devolution of the allotment, the maternal relatives would inherit, and if the Arkansas law in effect after August 8. 1902. governed. then the paternal relative inherited. The United States Supreme Court, affirming the opinion of this court. said in the first syllabus:

"The devolution of an allotment on behalf of a deceased Creek citizen which was not selected nor made until after the Supplemental Creek Agreement of June 30, 1902 (32 Stat. at L. 258, c. 1323), went into effect is governed by the Arkansas laws of descent and distribution which, by section 6 of that act, and by the act of May 27, 1902 (32 Stat. at L. 258, c. 888), were substituted for the Creek tribal laws of descent and distribution recognized by a provision of Original Creek Agreement March 1, 1901 (31 Stat. at L. 861, c. 676), § 28, which the later acts repeal."

The decisions of the federal courts are controlling on questions involving allotment acts relating to members of the Five Civilized Tribes, but our own court is in full accord with the above decisions, and has uniformly held that, if a Creek citizen dies before receiving his allotment, at the time of his death he is not seised of an inheritable estate in lands afterwards allotted to him, and that the descent of such allotment is cast at the time the certificate of allotment is issued, and the law in effect at that particular time governs in the devolution of said allotted lands. De Graffenried et al. v. Iowa Land & Trust Co., 20 Okla. 687, 95 Pac. 624; Godfrey v. Iowa Land & Trust Co., 21 Okla. 293, 95 Pac. 792; Irving et al. v. Diamond, 23 Okla. 325, 100 Pac. 557; Lamb v. Baker, 27 Okla. 739, 117 Pac. 189; Sanders v. Sanders et al., 28 Okla. 59, 117 Pac. 338; Hooks et al. v. Kennard et al., 28 Okla. 457, 114 Pac. 744; Barnett et al. v. Way et al., 29 Okla. 780, 119 Pac. 418; Hughes Land Co. et al. v. Bailey et al., 30 Okla. 194, 120 Pac. 290; Skelton v. Dill, 30 Okla. 278, 119 Pac 267; Divine v. Harmon et al., 30 Okla. 820 121 Pac. 219; Brady v. Sizemore et al., 35 Okla. 169, 124 Pac. 615; Bledsoe v. Wortman et al., 35 Okla. 261, 129 Pac. 841; Jones et al. v. Hubbard, 37 Okla. 592, 132 Pac. 1082; Scott v. Jacobs et al., 40 Okla. 522, 140 Pac. 148; Warner et al. v. Grayson et al., 46 Okla. 622, 149 Pac. 235; Cook v. Childs, 49 Okla. 321, 152 Pac. 88; Powell v. Crittenden, 57 Okla. 1, 156 Pac. 661.

In the case at bar the allottee, Nancy Jones Ralston, died in August, 1900. At the time of her death no allotment had been selected for her, and her certificate of allotment was dated January 2, 1908. Therefore the laws of Oklahoma govern in the devolution of this allotment. Aldridge et al. v. Whitten, 56 Okla. 694, 156 Pac. 667; Thompson v. Cornelius, 53 Okla. 85, 155 Pac. 602; Jefferson et al. v. Cook et al., 53 Okla. 272, 155 Pac. 852.

Section 8418, Rev. Laws 1910, provides that, if decedent leaves no issue, nor husband nor wife, as in the case at bar, the estate must go to the father and mother in equal shares. But decedent's mother is a noncitizen of the Creek Nation. The first proviso in section 6 of the Supplemental Creek Treaty (32 Stat. L. 500) is as follows:

"Provided, that only citizens of the Creek Nation, male and female, and their Creek descendants shall inherit lands of the Creek Nation."

In the case of Jefferson et al. v. Cook et al., supra, it was held that sections 13 and 21 of the Enabling Act and section 2 of article 25 of the Constitution, while operating to repeal that part of section 6 of the Supplemental Creek Agreement (32 Stat. 500) putting in force in the Creek Nation, chapter 49 of Mansfield's Digest of the Statutes of Arkansas, and substituting therefor the succession laws of Oklahoma, yet the two provisos found in said section 6 survived in full force and effect and were not repealed and operated upon the Oklahoma laws thus put into effect to the extent of limiting the same so that only Creek citizens and their descendants can inherit lands of the Creek Nation, and these provisos stand unrepealed. Iowa Land & Trust Co. v. Dawson, 37 Okla. 593, 134 Pac. 39; Gillum v. Anglin, 44 Okla. 684, 145 Pac. 1145; Stalcup v. Mullen, 49 Okla. 543, 153 Pac. 868; Thompson v. Cornelius, supra.

In their brief defendants insist that section 5 of an act of Congress approved April 26, 1906 (34 Stat. L. 137, ch. 1876), which reads as follows:

"That all patent for deeds to allottee in any of the Five Civilized Tribes to be hereafter issued shall issue in the name of the allottee, and if any such allottee shall die before such patent or deed becomes effective, the title to the lands described therein shall inure to and vest in his heirs, and in case any allottee shall die after restrictions have been removed, his property shall descend to his heirs or his lawful assigns, as if the patent or deed had issued to the allottee during his life, and all patents heretofore issued, where the allottee died before the same became effective, shall be given like effect * * * "

—and section 32 of an act of Congress approved June 25, 1910 (36 Stat. L. 855, ch. 431), which is as follows:

"Where deeds to tribal lands in the Five Civilized Tribes have been or may be issued, in pursuance of any tribal agreement or act of Congress, to a person who had died, or who hereafter dies before the approval of such deed, the title to the land designated therein shall inure to and become vested in the heirs, devisees, or assigns, of such deceased grantee, during life" ... the deceased grantee as if the deed had issued to

—govern in the case at bar, and provide that the land in controversy shall be distributed under the Creek law in force at the date of the death of the allottee, in August, 1900; that is, counsel for defendants argues that the effect and intent of the above two quoted statutes is to abrogate the rule heretofore adhered to by this court and the United States Supreme Court in holding that the descent was cast at the time the certificate of allotment was issued, and operates to make the law in force at the death of the allottee controlling in the distribution of the allotment. No authorities have been cited in support of this contention, and we have been unable to find where either of these sections has been construed, but we do not agree with the interpretation advanced by defendants thereon.

To our minds it is evident that the object of these statutes was not to provide for the devolution of the allotment of a deceased Indian, but to prescribe a uniform method and procedure for issuing deeds to allotments of deceased citizens. These statutes deal with "patents" and "deeds," but the equitable title to the allotment rests in the allottee or his heirs whenever the filing is made, which is evidenced by what is known as a "certificate of allotment," and this always precedes, sometimes even for years, the issuance of the patent or deed. The title is divested from the tribal government and vested in the allottee or his heirs at the very moment the certificate of filing is issued, and if it had been, the intent of Congress in enacting the above-quoted sections to make the law in force at the date of the death of the allottee govern in the devolution of the allotment, then, instead of using the words "patent" and "deeds" to give effect to such intention, "certificate of allotment" or words of like import should have been used.

We recommend that the judgment be affirmed.

By the Court: It is so ordered.