## ISRAEL v. WILLIAMS et al.

No. 14345—Opinion Filed Dec. 4, 1923.

1. **Indians—Devolution of Allotment—Death of Creek Citizen Before Receiving Allotment.**

If a Creek citizen dies before receiving his allotment, at the time of his death he is not seized of an inheritable estate in lands afterwards allotted to him or to his heirs, and the descent of such allotment is cast at the time the certificate of allotment is issued, and the law in effect at that particular time governs the devolution of said allotted lands. In the instant case the certificate to the allotment in question was issued on the 25th day of June, 1902. prior to the date that the Supplemental Creek Agreement became effective, and at a time when a noncitizen of the Creek Tribe of Indians could inherit allotments made to citizens of the Creek Nation.

2. **Indians—Conveyances by Full-Bloods—Approval.**

The act of Congress of April 26, 1906, which is entitled, "Act to provide for the final disposition of the affairs of the Five Civilized Tribes in the Indian Territory and for other purposes," section 22, provides among other things, as follows:

"All conveyances made under this provision by heirs, who are full-blood Indians, are to be subject to the approval of the Secretary of the Interior, under such rules and regulations as he may prescribe."

And said act applies to full-blood Indian heirs of whatever tribe of the Five Civilized Tribes to which said heir belongs, and there is nothing in said act which does not affect each of the Five Civilized Tribes and the members thereof exactly in the same manner.

3. **Same—Conveyance by Heirs—Allotment After Death.**

Act of April 26, 1906, declaring that all conveyances by heirs, who are full-blood Indians, are to be subject to the approval of the Secretary of. the Interior, under such rules and regulations as he may prescribe, applies where the allotment was not made to an Indian then living, but in the name of one who had died, for the benefit of his heirs.

4. **Same.**

Full-blood heirs of a deceased enrolled citizen of one of the Five Civilized Tribes, on whose account an allotment was selected after his death by an administrator or by the Dawes Commission, take subject to the restriction in Act April 26, 1906, c. 1876, 34 Stat. 145, sec. 22, declaring that all conveyances made thereunder by heirs who are full-blood Indians are subject to the approval of the Secretary of the Interior.

(Syllabus by Thompson, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, McIntosh County; Harve L. Melton, Judge.

Action by John Israel, against M. V. Williams, American Investment Company, a corporation, and C. E. Foley. Judgment for defendants. Plaintiff appeals. Reversed and remanded.

Vilas V. Vernor, for plaintiff in error.

C. H. Tully, Kirby Fitzpatrick, and H. E. Oakes, for defendants in error.

Opinion by THOMPSON, C. This action was commenced in the district court of McIntosh county, Okla., by John Israel, plaintiff in error, plaintiff below,. against M. V. Williams, American Investment Company, and C. E. Foley, defendants in error, defendants below, for the recovery of the southeast quarter, of the southwest quarter of section 19, and the west half of the southwest quarter, of section 34, and other lands not involved in this action, all being in township 11 north, range 17 east, located in McIntosh county, Okla.

The cause was tried to the court upon an agreed statement of facts, which is as follows:

"First. That the plaintiff in this action, John Israel, is a duly enrolled Cherokee Indian and was enrolled as a full-blood Cherokee Indian opposite roll No. 28382, and his enrollment so appears on the final enrollment records of the citizens by blood of the Cherokee Tribe of Indians.

"Second. That John Israel and Louisa Israel were legally married and were man and wife at the date of the death of the said Louisa Israel on February 1, 1899, and that at the time of her death she left as her sole and only heirs at law her husband, John Israel, and one child, Ella Israel by name.

"Third. That Louisa Israel, the wife of John Israel, was enrolled as a full-blood Creek Indian Citizen on the approved rolls containing the names of citizens by blood of the Creek Tribe of Indians.

"Fourth. That Ella Israel, the daughter of John and Louisa Israel, was enrolled as a three-eights (⅜) blood Creek Indian citizen opposite roll No. 8677, and that she departed this life aged about two years on or about November 24, 1899, intestate and without issue, leaving as her sole and only heir at law her father, John Israel, plaintiff herein.

"Fifth. That thereafter and on May 12, 1902, there was selected and set apart to the heirs of Ella Israel, deceased, as and for a portion of her allotment of land in the Creek Nation, the following described tract of land: Southeast quarter of southwest quarter of section nineteen (19), and west half of southwest quarter of section thirty-four (34), all of said land being in township eleven (11) north, range seventeen (17) east, located in McIntosh county, Oklahoma, and

—"that certificate of allotment to said land issued to the heirs of Ella Israel on June 25, 1902, and thereafter the above described land was on March 26, 1904, patented to the heirs of Ella Israel by the proper officials of the United States government and the Creek Nation.

"Sixth. That John Israel, the full-blood Cherokee father of Ella Israel, deceased, was and is the sole and only heir at law of the said Ella Israel.

"Seventh. That John Israel, the father of Ella Israel, deceased, did on December 10, 1906, for a good and valuable consideration execute and deliver his warranty deed to one John W. McGee in which deed there was described the hereinabove one hundred and twenty acres of land and that said deed was regular in form and duly acknowledged before a notary public and duly delivered to John W. McGee and so far as the execution of form or consideration or delivery of said instrument are concerned, the same are not questioned in this suit.

"Eighth. That the said deed last above described and being executed by John Israel to John W. McGee was never approved by the Secretary of the Interior of the United States nor by the county court of Cherokee county, Oklahoma, that being the county court having jurisdiction to administer upon the estate of Ella Israel, deceased, at any time subsequent to its execution and delivery.

"Ninth. That the defendant C. E. Foley is now in the possession of the southeast quarter of the southwest quarter of section 19, township 11 north, range 17 east, and has been in the possession thereof since January 1, 1914, and that in the event the court finds the deed executed by John Israel on December 10, 1906, to John W. McGee did not require the approval of the Secretary of the Interior, his title hereto is valid and perfect.

"Tenth. That the defendant M. V. Williams is in the possession of the west half of the southwest quarter of section 34, township 11 north, range 17 east, and has been in the possession thereof since January 1, 1912, and that in the event the court finds that the deed executed by John Israel on December 10, 1906, to John W. McGee did not require the approval of the Secretary of the Interior, his title thereto is valid and perfect.

"Eleventh. That the defendant American Investment Company did on February 12, 1920, loan to the defendant M. V. Williams the sum of $1,200, and took as security for the payment thereof his note and mortgage upon the land described in paragraph 10, and that in the event the court finds the deed executed by John Israel to John W. McGee on December 10, 1906, did not require the approval of the Secretary of the Interior their mortgage lien upon the said land is valid and perfect.

"Twelfth. And, in case the court finds that that deed is invalid, that the American Investment Company is entitled to judgment against M. V. Williams personally for the amount of its said loan.

"Thirteenth. That in the event the court finds that the deed executed by John Israel to John W. McGee on December 10, 1906, in order to be a valid conveyance required the approval of the Secretary of the Interior, or subsequent to the act of Congress of May 27, 1908, the approval of the county court of Cherokee county, Oklahoma, that being the court having jurisdiction to administer upon the estate of Ella Israel, deceased, then and in that event the instruments possessed by the defendants and hereinabove set out should be cancelled by the court as clouds upon the title to said lands and John Israel be decreed to be the owner of the property in fee simple."

Which trial resulted in a judgment in favor of the defendants in error, from which judgment John Israel, plaintiff below, appeals to this court for a review of said judgment.

Attorney for plaintiff in error sets out six assignments of error, but submits his entire argument upon the sole and only question in the case as a question of law, which is as follows:

"While there are enumerated six assignments of error as set forth in the petition

.in error, still the sole and only question in the case was a question of law, and that was, does the deed of conveyance of a full-blood Cherokee Indian father require the approval of the Secretary of the Interior when executed and delivered on the 10th day of December, 1906, when the lands described therein have been inherited by the father from his child who was enrolled after the blood of her mother and the same being a Creek citizen by blood. Or to put the question in the inverse order, does the fact that the child is enrolled in a different tribe or nation than that of the father cause the provision found in the 1906 act of Congress requiring the approval of all deeds executed by heirs of the full-blood not to apply?"

On examination of the record it appears that John Israel was a full-blood citizen of the Cherokee Nation and that Ella Israel was his daughter by a Creek Indian mother and enrolled as a three-eighths blood Creek Indian and that Ella Israel, his daughter, departed this life intestate and without issue November 24, 1899, leaving as her sole and only heir at law her father, her mother having preceded the child in death, and that on May 12, 1902, by selection of the plaintiff in error there was set apart, out of the lands of the Creek Nation of Indians, to the heirs of Ella Israel, the said daughter, the lands herein described, and certificate of allotment issued to said heirs on June 25, 1902, which lands were patented to the heirs of Ella Israel, deceased, on March 26, 1904; that John Israel, on December 10, 1906, sold said lands to John W. McGee, which deed was never approved by the Secretary of the Interior nor by the county court of Cherokee county, having jurisdiction over the settlement of the estate of Ella Israel, deceased, and that the defendants in error C. E. Foley and M. V. Williams obtained the title to different portions of said land by mesne conveyances from John W. McGee, and that the defendant in error American Investment Company claims to have a mortgage upon a portion of said land executed by M. V. Williams and Margaret Williams.

It is agreed by counsel for both sides that if the deed from John Israel of December 10, 1906, to John W. McGee conveyed title without first having been approved by the Secretary of the Interior, or the county court having jurisdiction of the settlement of the estate, then the plaintiff cannot prevail, but judgment must be rendered in favor of the defendants, but in the event it is determined that the deed, above mentioned, before it could convey title to the land, had to be approved by the Secretary of the Interior or the county court, having jurisdiction of the settlement of the estate of the deceased allottee, then judgment should be rendered in favor of plaintiff, and all deeds and mortgages cancelled as clouds upon the title, and plaintiff should be decreed to be the owner of the property in fee simple, and that the American Investment Company should have a personal judgment against its co-defendant, M. V. Williams, for the amount of the loan for which Williams had mortgaged the land to it.

The trial court found that the act of April 26, 1906, did not apply to John Israel as to his conveyance having to be approved by the Secretary of the Interior, he being a full-blood Cherokee Indian heir of Ella Israel, his deceased daughter, who was three-eights (⅜) blood Creek Indian citizen, and that John Israel occupied the status of a noncitizen of the Creek Tribe of Indians and it is from this judgment for the defendants that the plaintiff appeals.

It must be borne in mind that Ella Israel died on or about the 24th day of November, 1899, and it must be further borne in mind that this allotment was selected and set apart for the heirs of Ella Israel, deceased, on the 12th day of May, 1902, and that a certificate of allotment was issued to the heirs of Ella Israel for the lands on June 25, 1902, at a time when a noncitizen could inherit a Creek allotment, and under the scheme of allotment and the law applicable to the same this certificate was prima facie evidence of title.

In the case of Bowen v. Carter et al., 42 Okla. 565, 144 Pac. 170, this court held:

"An allotment certificate when issued to an enrolled member of the Five Civilized Tribes of the Indian Territory, like a patent for public lands, is dual in effect. It is an adjudication of the special tribunal empowered to decide the question that the party to whom it issues is entitled to the land, and it is a conveyance of the right to this title to the allottee."

At the date of the selection and issuance of certificate a noncitizen of the Creek Nation could inherit the allotments of citizens of the Creek Nation and the right of John Israel of inheritance in said lands became fixed, on June 25, 1902, being the date of the certificate of allotment, before the date the Supplemental Creek Agreement became effective, which provided:

"That only citizens of the Creek Nation, male and female, and their Creek descendants shall inherit the lands of the Creek Nation."

Said act further provided that, in the event there was no person of Creek citizenship to take the descent, then the inheritance should go to noncitizen heirs. This Supplemental Agreement was approved June 30, 1902, and ratified by the tribe on July 26, 1902, and proclaimed by the President of

the United States on August 8, 1902, and it being admitted that John Israel, the plaintiff herein, was the sole and only heir at law of Ella Israel, it is our opinion that the descent of the allotment of Ella Israel was cast before the passage and adoption of the Creek Supplemental Agreement.

This court, in the case of McDonald et al. v. Ralston et al., 65 Okla. 277, 166 Pac. 405, held:

"If a Creek citizen dies before receiving his allotment, at the time of his death he is not seised of an inheritable estate in lands afterwards allotted to him or to his heirs, and the descent of such allotment is cast at the time the certificate of allotment is issued, and the law in effect at that particular time governs in the devolution of said allotted lands."

The law regulating the conveyance of a full-blood Indian heir applied in this case, and if the plaintiff had made this conveyance prior to the 26th day of April, 1906, the conveyance would have been good without the approval of the Secretary of the Interior, but the conveyance in this case from John Israel to John W. McGee bears date of December 10, 1906, months after the passage and approval of the act of April 26, 1906.

Under the Creek Agreement there were two classes of allotments, one where a member of the tribe was entitled to receive the same because of his membership in the tribe, and the other, which the heirs of the deceased allottee might receive that the deceased member of the tribe might have had, had he lived, and the allotment in this case falls within the latter class.

The act of Congress of April 26, 1906, which is entitled, "Act to provide for the final disposition of the affairs of the Five Civilized Tribes in the Indian Territory and for other purposes," section 22, provides, among other things, as follows:

"All conveyances made under this provision by heirs, who are full-blood Indians, are to be subject to the approval of the Secretary of the Interior, under such rules and regulations as he may prescribe."

It is clear from the title of this act that this provision of the act applied to full-blood Indian heirs of whatever tribe of the Five Civilized Tribes, to which said heir belonged, and the contention of attorneys for defendants that this provision of the act did not apply to an heir who is a full-blood Cherokee to an allotment he inherited from a Creek Indian citizen, cannot be sustained, as there is nothing in the act of Congress, above referred to, which does not affect each of the Five Civilized Tribes and the members thereof exactly in the same manner. Having arrived at this conclusion, the Supreme Court of the United States has set at rest the further questions involved in this case.

In the case of Brader v. James, 246 U. S. 88, 62 L. Ed. 591, it is held:

"The approval by the Secretary of the Interior which by the act of April 26, 1906, Sec. 22, is made a condition of a valid conveyance by the heirs of a deceased allottee of either of the Five Civilized Tribes, must be obtained in the case of land as to which the original restriction upon alienation by the allottee or his heirs had expired before its enactment.

"A statute requiring approval by the Secretary of the Interior of conveyances made by a tribal Indian is not unconstitutional, even as applied to land upon the conveyance of which no such restriction existed at the time of its enactment, and notwithstanding the admission of its owner to citizenship."

And again, in the case of Talley v. Burgess et al., 246 U. S. 104, 62 L. Ed. 600, the Supreme Court of the United States said:

"The restrictions upon conveyances by the heirs of any deceased Indian of either of the Five Civilized Tribes whose selection has been made, or to whom a deed or patent has been issued for his or her share of the land of the tribe to which he or she belongs, made by the provisions of section 22 of the act of April 26, 1906, apply as well in a case where selection has been made as provided by section 20 of the Cherokee Agreement of July 1, 1902, by the duly appointed executor or administrator of an Indian who died before receiving his allotment, as to a case where the land was selected by the ancestor in his lifetime."

And, in the case of David v. Youngken, 250 Fed. 208, the court said:

"Act of April 26, 1906, declaring that all conveyances by heirs who are fullblood Indians are to be subject to the approval of the Secretary of the Interior, under such rules and regulations as he may prescribe applies where the allotment was not made to an Indian then living, but in the name of one who had died, for the benefit of his heirs."

And the Supreme Court of the United States, in the case of Harris v. Bell, 254 U. S. 103, 65 L. Ed. 159, held as follows:

"Full-blood heirs of a deceased enrolled citizen of one of the Five Civilized Tribes, on whose account an allotment was selected after his death by an administrator or by the Dawes Commission, take subject to the restriction in Act April 26, 1906, c. 1876, 34 Stat. 145, No. 22, declaring that all conveyances made thereunder by heirs who are fullblood Indians are subject to the approval of the Secretary of the Interior."

And the Supreme Court, in the case, supra, held that such allotment to the heirs is not

a direct allotment to them but is an inheritance, the alienability of which, by full-blood heirs, is not determined by the act governing allotments to living allottees, but by the provisions governing alienability by heirs.

From the above opinions it is very clear to this court that Congress meant that deeds of conveyance of full-blood Indian heirs of each of the Five Civilized Tribes of the Indian Territory should and must be approved by the Secretary of the Interior, and it makes no difference whether the lands had been selected by the deceased allottee before his death or were allotted to his heirs after his death, and it makes no difference whether the restrictions on the alienation of this allotment had expired before the passage of this act, that from and after the passage of the act a conveyance made by a full-blood Indian heir before it became effective had to be approved by the Secretary of the Interior, up to the date of the act of Congress of May 27, 1908, which act substituted the "court having jurisdiction of the settlement of the estate of the deceased allottee," for the "Secretary of the Interior." The conveyance in the instant case, having been executed on the 10th day of December, 1906, in the opinion of this court, did not and could not become effective to convey the title to the lands in controversy without it first having been approved by the Secretary of the Interior, as required under section 22 of the act of Congress of April 26, 1906.

Having arrived at this conclusion, based upon the acts of Congress and the decisions of the Supreme Court of the United States in construing said acts, we are of the opinion that the judgment of the lower court should be, and is hereby, reversed and remanded, and, under the agreed statement of facts, with directions to the lower court to cancel all deeds and conveyances and the real estate mortgage in this action as clouds upon the title to said lands, and to decree that the plaintiff, John Israel, be the owner of the lands in fee simple, and under the agreed statement of facts the American Investment Company have judgment against M. V. Williams for the amount of money loaned by it to the defendant M. V. Williams.

By the Court: It is so ordered.