### UNITED STATES v. JACOBS et al.

#### (Circuit Court of Appeals, Eighth Circuit. March 18, 1912.)

#### No. 3,626.

1. INDIANS (§ 15*)—INDIAN LANDS—SALE—CONSTRUCTION—RESTRICTION—STATUTES—CONSTRUCTION.

Act Cong. June 30, 1902, c. 1323, § 16, 32 Stat. 503, provides that lands allotted to citizens of the Five Civilized Tribes in Oklahoma should not be incumbered, taken, or sold to secure any debt or obligation, nor be alienated by the allottee or his heirs before the expiration of five years from the date of the approval of the Supplementary Agreement, except with the approval of the Secretary of the Interior, and that each citizen shall select a quarter of his allotment as a homestead, which shall remain nontaxable, unalienable, and free from every incumbrance for 21 years from the date of the deed therefore. *Held*, that Act Cong. April 21, 1904, c. 1402, 33 Stat. 189–204, removing all restrictions on the alienation of lands of all the allottees of either of the Five Tribes not of Indian blood, except minors and except as to homesteads, was not limited to transfers by allottees, but extended as well to allottees' heirs.

[Ed. Note.—For other cases, see Indians, Cent. Dig. §§ 17, 29, 34, 37–41; Dec. Dig. § 15.*]

2. INDIANS (§ 15*)—INDIAN LANDS—BONA FIDE PURCHASER.

Act Cong. March 1, 1901, c. 676, 31 Stat. 861, and Act June 30, 1902, c. 1323, 32 Stat. 500, provided for the allotment of lands to freedman members of the Five Civilized Tribes of Indians in Oklahoma who were such on April 1, 1899. A commissioner found that J. was living on that date; that her death occurred subsequent thereto; that she was a freedman member by adoption of the Creek Nation, and as such entitled to an allotment within the provision of the act; that if any such citizens died after the date specified before receiving his allotment, and a distributive share of all the moneys and funds of the tribe, the land and money to which he would be entitled, if living, should descend to his heirs. J. having left a mother and sisters, a patent to the J. allotment was issued to them. *Held* that, the heirs being in existence when J. died and when the patent was issued, third persons dealing with the title were entitled to rely on the commissioner's finding that J. was alive on April 1, 1899, though she was not so in fact.

[Ed. Note.—For other cases, see Indians, Cent. Dig. §§ 17, 29, 34, 37–44; Dec. Dig. § 15.*]

3. INDIANS (§ 13*)—SUIT TO CANCEL PATENT—ANSWER—DEFECT NOT CHALLENGED AT TRIAL.

In a suit by the United States to cancel a patent to lands alleged to have been improperly allotted to a freedman member of an Indian nation, an answer, alleging that defendant was a bona fide purchaser, was in

---

the nature of a plea, and, if insufficient in law, must be challenged in the trial court, as required by equity rule 39 (29 Sup. Ct. xxix).

[Ed. Note.—For other cases, see Indians, Cent. Dig. § 30; Dec. Dig. § 13.*]

4. INDIANS (§ 13*)—SUIT TO CANCEL PATENT—ANSWER—BONA FIDE PURCHASER.

Where, in a suit to set aside a patent to Indian lands conveyed by the allottees to M., the answer alleged the giving of a mortgage by M. to a realty company for good and valuable consideration without any notice on the company's part of the fraud alleged in the bill, and on the part of the purchaser on foreclosure of the mortgage that he purchased at the judicial sale for a valuable consideration without any notice, the answer was sufficient when challenged for the first time after decree, though it failed to state specifically the consideration paid or that the defendant's grantor was in possession.

[Ed. Note.—For other cases, see Indians, Cent. Dig. § 30; Dec. Dig. § 13.*]

Appeal from the Circuit Court of the United States for the Eastern District of Oklahoma.

Action by the United States against Lizzie Jacobs and others. Judgment for plaintiff for a part only of the relief, and it appeals. Affirmed.

William J. Gregg, U. S. Atty. (John B. Meserve, Asst. U. S. Atty., on the brief), for the United States.

J. B. Campbell (N. B. Maxey and Wm. O. Beall, on the brief), for appellees.

James B. Diggs, George S. Ramsey, and C. L. Thomas filed brief for amici curiæ in support of points raised by appellees.

Before SANBORN and ADAMS, Circuit Judges, and WM. H. MUNGER, District Judge.

WM. H. MUNGER, District Judge. From the facts it appears that a commission provided by act of Congress to the Five Civilized Tribes of Indians found that Pearlie Jacobs, a minor, was a freedman member by adoption of the Creek Nation or Tribe of Indians on the 1st day of April, 1899, and as such was entitled to an allotment of land. She having died before the allotment was made, the allotment was made to her heirs and patents were issued to them. The statutes under which these allotments were made were Act March 1, 1901, c. 676, 31 Stat. 861, and Act June 30, 1902, c. 1323, 32 Stat. 500. Section 16 of the later enactment provided as follows:

"Lands allotted to citizens shall not in any manner whatever or at any time be incumbered, taken or sold to secure or satisfy any debt or obligation nor be alienated by the allottee or his heirs before the expiration of five years from the date of the approval of this supplemental agreement, except with the approval of the Secretary of the Interior. Each citizen shall select from his allotment forty acres of land, or a quarter of a quarter section, as a homestead, which shall be and remain nontaxable, inalienable, and free from any incumbrance whatever for twenty-one years from the date of the deed therefor, and a separate deed shall be issued to each allottee for his homestead, in which this condition shall appear."

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

A later enactment by Congress of date April 21, 1904 (chapter 1402, 33 Stat. 189–204), under the head of "Miscellaneous," contained this provision:

"And all restrictions upon the alienation of lands of all allottees of either of the Five Civilized Tribes of Indians who are not of Indian blood, except minors, are, except as to homesteads, hereby removed."

After obtaining patents, and before the expiration of five years from the approval of the supplemental agreement, the heirs of Pearlie Jacobs, consisting of her mother and two sisters, conveyed the lands in question, or a portion thereof, to the defendant C. K. Marks. As to the particular portion of the land involved in this hearing. Marks executed to the defendant Alpine Realty Company a mortgage deed to secure the payment of $3,000, owing by said Marks to said Realty Company. Default having been made in the terms of the mortgage, the Realty Company foreclosed such mortgage in the district court of Tulsa county, Okl., and the same was sold by order of the court, and purchased at foreclosure sale by the defendant W. E. Pollock. Said sale was confirmed by the court and a sheriff's deed ordered and issued to him.

This action is brought by the United States to set aside the allotment and patent to the heirs of Pearlie Jacobs, and quiet its title as against all the defendants, on the ground that a fraud was perpetrated upon the commission; that the fact was that Pearlie Jacobs died prior to April 1, 1899, and therefore she was not, nor were her heirs through her, entitled to the allotment. The defendants Alpine Realty Company and Pollock pleaded that they were bona fide purchasers for value, without notice, under the mortgage and judicial sale before mentioned.

Upon a trial the court found from the evidence that Pearlie Jacobs did die prior to April 1, 1899, but found that the defendants Alpine Realty Company and Pollock were, as to the portion of the land described as the N. ½ of the S. E. ¼ of the N. W. ¼, the N. ½ of the N. ½ of the S. ½ of the S. E. ¼ of the N. W. ¼, lot 3, and the north 25.03 acres of lot 4, of section 5, township 18 N., range 12 E., bona fide purchasers, and confirmed the title thereto in them. As to the other defendants and other portions of the allotment, the court entered a decree as prayed for by the complainant. Complainant has appealed from the decree confirming the title to the before-described tract in Pollock.

[1] It is insisted upon the part of the government that the defendants could not be bona fide purchasers because, under the law, the heirs of Pearlie Jacobs were prohibited from alienating the land for a period of five years. They argue that, by section 16 above quoted, the prohibition upon alienation before the expiration of five years was a prohibition against alienation by the allottee or his heirs, and as the term "heirs" was not used in the act of April 21, 1904, removing the restrictions, that the restriction was only removed so as to authorize the allottee to make a conveyance. We do not so construe the statute. The act of April 21, 1904, above quoted, says: "And all restrictions upon the alienation of lands of all allottees, except

minors, are removed." This was not a removal of the restriction upon alienation by the allottee only, but was general and applied to allottees or heirs of allottees, except in cases only of minors, and no claim is made that any of the heirs of Pearlie Jacobs were minors. Hence it is clear that there was no restriction upon the alienation by them.

It is assigned as error that the court admitted in evidence the deeds from the heirs to Marks, the order of confirmation of the sheriff's sale, and the sheriff's deed to Pollock. In the view we have taken of the law, as before stated, such evidence was competent under the issues.

Again, it is urged that there were no heirs within the meaning of the statute, and hence the patent was issued to a fictitious person. The commission found that Pearlie Jacobs was living on April 1, 1899; that her death was subsequent to that date. The act provided that:

"If any such citizen has died since that time, or may hereafter die before receiving his allotment of lands and distributive share of all the funds of the tribe, the lands and money to which he would be entitled, if living, shall descend to his heirs according to the law of descent and distribution of the Creek Nation and be allotted and distributed to them accordingly."

[2] The mother and sisters were the heirs, and the commission having found that Pearlie Jacobs was a living member of the tribe on April 1, 1899, and the patent issued to her heirs, third parties dealing with the title had a right to rely upon the correctness of such finding. The heirs being in existence when she died and patent issued, it was not a case of a patent issued to a fictitious person.

We have reviewed the evidence and concur in the finding of the trial court that the defendants Alpine Realty Company and Pollock were entitled to protection as bona fide purchasers without notice. Counsel for the government, however, argue that the plea of bona fide purchaser was insufficient, in that it did not state specifically the consideration paid or that their grantor was in possession of the land.

[3] The answer, it is true, was not as definite and specific in this respect as it should have been, but in such a case the answer that the defendant is a bona fide purchaser is in the nature of a plea, and, if it is claimed to be insufficient as a matter of law, a challenge to the sufficiency of the answer in that respect should have been made in the trial court. Equity rule 39 (29 Sup. Ct. xxix). This was not done.

[4] The answer alleged the giving of the mortgage by Marks to the Alpine Realty Company for a good and valuable consideration, without any notice upon the part of the Realty Company of the fraud alleged, and it was also alleged, on the part of Pollock, that he purchased at the judicial sale for a valuable consideration, without any notice.

We think the answer sufficient in this respect when challenged for the first time after decree. Equity rule 33 (29 Sup. Ct. xxix).

The decree is affirmed.