## BRADLEY *et al.* v. GODDARD.

No. 3822.   Opinion Filed December 22, 1914.

(145 Pac. 409.)

1.   INDIANS—Allotments—Removal of Restrictions—Operation of Statute. As to a certain portion of the lands of the Creek Nation, namely, those held by a certain class of citizens, to-wit, allottees not of Indian blood, and (in the event of their death) their heirs, Congress by the Act of April 21, 1904 (chapter 1402, 33 Stat. 204), removed all restrictions upon alienation, thereby granting to such allottees or to such heirs power to convey all lands allotted to or inherited by them, except the portion designated as a homestead while the allottee lived, and the lands of minors during their minority.

2.   SAME—Alienation of Allotment—Removal of Restrictions—"Allottees." The word "allottees," as used in Act April 21, 1904, c. 1402, 33 Stat. 204, removing the restraint on alienations by persons not of Indian blood, except minors, refers to the persons to whom allotments are made, and not to their heirs.

(Syllabus by the Court.)

*Error from District Court, Wagoner County;*

*R. C. Allen, Judge.*

Action by George N. Goddard against Thomas F. Bradley and others. Judgment for plaintiff, and defendants bring error. Affirmed.

*Powell & Wilson,* and *E. L. Kirby,* for plaintiffs in error.

*Robert F. Blair* and *Henry M. Brown,* for defendant in error.

BLEAKMORE, J. This is an action begun in the district court of Wagoner county by the defendant in error, as plaintiff, against the plaintiffs in error, as defendants, to cancel and set aside a deed and mortgage executed to the plaintiffs in error Bradley and Malone, respectively. The cause was tried to the court without a jury, and resulted in a decree canceling said deed and mortgage, and enjoining plaintiffs in error from clouding the title, or interfering with the possession, of defendant in error. The parties will be hereafter referred to as they appeared in the trial.

The facts are: That the land involved was allotted to one Lucy Lewis, a duly enrolled freedman of the Creek Nation, not of Indian blood, who was born prior to April 1, 1899, and who died in the year 1901, an infant, unmarried and without issue, leaving surviving her father, John Lewis, a freedman citizen of the Creek Nation, and her mother, Docie Lewis, a noncitizen of said nation. In February, 1905, John Lewis and Docie Lewis executed and delivered a warranty deed conveying to plaintiff a portion of the allotment of said Lucy Lewis, and in February, 1906, executed a warranty deed conveying to plaintiff the remainder of said allotment. That on the 15th day of March, 1909, the mother of the deceased allottee, Docie Lewis, executed and delivered a deed to the defendant Thomas Bradley, purporting to convey to him the entire allotment. That afterwards, on March 28, 1911, the father of the deceased allottee, John Lewis, executed a mortgage upon the entire

allotment to the defendant Lewis B. Malone. The plaintiff was in possession of the lands under the conveyance made to him.

The allotment was made under the provisions of the Act of March 1, 1901, (31 Stat. 866, c. 676), as modified by the Act of June 30, 1902 (32 Stat. 500, c. 1323). By the terms of the Act of March 1, 1901, it was provided:

"Lands allotted to citizens hereunder shall not * * * be alienable by the allottee or his heirs at any time before the expiration of five years from the ratification of this agreement, except with the approval of the Secretary of the Interior."

By section 16 of the Act of Congress of June 30, 1902, it is provided:

"Lands allotted to citizens shall not in any manner whatever, or at any time be incumbered, taken, or sold to secure or satisfy any debt or obligation nor be alienated by the allottee or his heirs before the expiration of five years from the date of the approval of this Supplemental Agreement, except with the approval of the Secretary of the Interior. Each citizen shall select from his allotment forty acres of land, or a quarter of a quarter section, as a homestead, which shall be and remain nontaxable, inalienable, and free from any incumbrance whatever for twenty-one years from the date of the deed therefor, and a separate deed shall be issued to each allottee for his homestead, in which this condition shall appear. Selections of homesteads for minors, prisoners, convicts, incompetents and aged and infirm persons, who cannot select for themselves, may be made in the manner provided for the selection of their allotments, and if for any reason such selection be not made for any citizen it shall be the duty of said commission to make selection for him. The homestead of each citizen, shall remain, after the death of the allottee, for the use and support of children born to him after May 25, 1901, but if he have no such issue then he may dispose of his homestead by will, free from the limitation herein imposed, and if this be not done the land embraced in his homestead shall descend to his heirs, free from such limitation, according to the laws of descent herein otherwise prescribed. Any agreement or conveyance of any kind or character violative of any of the provisions of this paragraph shall be abso-

lutely void and not susceptible of ratification in any manner, and no rule of estoppel shall ever prevent the assertion of its invalidity."

Under these provisions the restraint upon alienation was a limitation attaching to and running with the land, in no wise dependent upon the life or death of the allottee. *Goodrum v. Buffalo,* 162 Fed. 817, 89 C. C. A. 525; *In re Lands of Civilized Tribes* (D. C.) 199 Fed. 811.

"The inalienability of the allotted lands was not due to the quality of the interests of the allottee, but to the expressed restrictions impossed." *Goat v. United States,* 224 U. S. 458, 32 Sup. Ct. 544, 56 L. Ed. 841).

By the Act of Congress of April 21, 1904 (33 Stat. 204, c. 1402), it was provided:

"And all the restrictions upon the alienation of lands of all allottees of either of the Five Civilized Tribes of Indians who are not of Indian blood except minors, are, except as to homesteads, hereby removed."

Neither the allottee nor her heirs were of Indian blood. The sole question decisive of this case is: Were the restrictions upon the alienation of said lands removed by the Act of April 21, 1904?

What were the restraints upon the alienation of the lands in question at the time of the passage of the Act of April 21, 1904, which could have been removed thereby? Manifestly such restraints were: (1) That during the periods prescribed by the allotment act no citizen to whom lands had been allotted could alienate the same (except a portion with the approval of the Secretary of the Interior); and (2) if such allottee died, his heirs during said periods could not convey such lands. The allottee was restrained from alienating during his lifetime—and after his death his heirs. These restrictions were impressed upon all lands allotted to Creek citizens during their lifetime, regardless of Indian blood.

As to a portion of these lands, namely, those held by a certain

class of citizens, to wit, allottees not of Indian blood, and (in the event of their death) their heirs, Congress, by the Act of April 21, 1904, removed all restrictions upon alienation, thereby granting to such allottees or to such heirs power to convey all lands allotted to or in herited by them, except the portion designated as a homestead while the allottee lived, and the lands of minors during their minority.

Restrictions upon the alienation of these lands applied solely to allottees and to the heirs of deceased allottees thereof, and could be removed only as affecting conveyances made by such allottees or such heirs. Protection of the rights of the living was alone contemplated by the legislation imposing restrictions, and the act removing such restrictions could have had regard only for the lands and rights of living owners.

The restraint upon alienation provided by the Act of June 30, 1902, *supra,* being a limitation, running with the land, upon the power of the allottee during his lifetime and of his heirs after his death to convey the same, the obvious purpose of Congress in removing such restriction upon the lands of a certain class of persons was to permit those persons, having title to such lands either by allotment or by inheritance, to convey, and therefore must necessarily have referred to and removed restrictions upon the power of heirs of deceased allottees to convey such lands. Deceased allottees could not have been contemplated, and as to the lands which had been allotted to them only the rights of their heirs who took title under the provisions of the allotment act could have been affected.

In *Parkinson v. Skelton,* 33 Okla. 813, 128 Pac. 131, it is said in the syllabus:

"The words 'allottees,' as used in Act April 21, 1904, c. 1402, 33 Stat. 204, refers to the parties to whom an allotment is made, and not to their heirs; and where the allottee under the said act would have been authorized to alienate his land, had he lived, the

same, on his death, was alienable by his heirs, without reference to their blood."

In *United States v. Jacobs*, 195 Fed. 707, 115 C. C. A. 507, a case in which a member of the Creek tribe had died prior to allotment, and the lands to which he would have been entitled if living had been allotted to his heirs, it was said by the United States Circuit Court of Appeals for the Eighth Circuit:

"The Act of April 21, 1904, above quoted, says, 'And all restrictions upon the alienation of lands of all allottees, except minors, are removed.' This was not a removal of the restrictions upon alienation by the allottee only, but was general and applied to allottees or heirs of allottees, except in cases only of minors, and no claim is made that any of the heirs of Pearlie Jacobs were minors. Hence it is clear that there was no restriction upon the alienation by them."

In construing section 16 of the Act of Congress of June 30, 1902, supra, Judge Campbell of the United States District Court for the Eastern District of Oklahoma said:

"I therefore conclude, in view of the entire section, studied in the light of cotemporaneous legislation regarding the other tribes, and the purpose sought to be accomplished, that the only reasonable construction is that the parties to the agreement intended that upon the death of the Creek allottee, in the absence of the children mentioned, whether before or after the expiration of the five years' restriction period affecting his surplus his homestead allotment should become immediately alienable by his devisees in case of will, and by his heirs in the absence of a will." *In re Lands of Civilized Tribes, supra.*

Plaintiff having deeds from both the father and mother of the deceased allottee, it is unnecessary here to determine the question as to whether the noncitizen parent inherited any part of said allotment. However, the Supreme Court of the United States in the recent case of *Skelton v. Dill*, 235 U. S. 206, 35 Sup. Ct. 60, 59 L. Ed. ——, in which the same question was raised, said:

"Both parties are claiming under deeds from the father and

mother, so we pass the question of who were the true heirs of the deceased child, observing only that under section 6 of the Supplemental Act, in the circumstances before stated, the mother was and the father was not a lawful heir."

In that case the mother was a member of the Creek Tribe of Indians, but the father was not. In the instant case the mother was a noncitizen and the father a citizen.

It follows from the foregoing that the judgment of the trial court should be affirmed, and it is so ordered.

All the Justices concur.