## ROBERTS v. CASNER *et al.*

No. 5584.    Opinion Filed October 5, 1915.

(152 Pac. 121.)

**INDIANS—Allotment—Alienation by Heirs.**  Where land was allotted to a minor Creek freedman on the 5th day of March, 1905, and he died intestate, unmarried and without issue prior to December 1, 1905, and the heirs of said minor were not of Indian blood and were over the age of 21 years at the time such minor died, and they sold and conveyed said allotted lands, including both homestead and surplus lands, subsequent to the death of said minor, such sale and conveyance of said lands vested title thereto in the vendee; the Supplemental Creek Agreement and Act Cong. April 21, 1904, c. 1402, 33 Stat. 204, having removed all restrictions upon the alienation of said lands.

(Syllabus by Collier, C.)

*Error from District Court, Wagoner County;*
*R. C. Allen, Judge.*

Action by George Roberts against F. W. Casner and others.  Judgment for defendants, and plaintiff brings error.  Affirmed.

*Z. I. J. Holt,* for plaintiff in error.

*E. G. Wilson (F. W. Casner,* of counsel), for defendants in error.

Opinion by COLLIER, C.  This is an action brought by Geo. Roberts against F. W. Casner and others to recover certain lands described in the petition.  The uncontradicted evidence in this case is that the lands in controversy were allotted to Louis Roberts, a Creek freedman, roll No. 5480, and were conveyed to him by the Creek Nation by deed dated March 8, 1905; that said allottee died in the fall of 1905, prior to December 1st of that year, intestate, unmarried, and without issue;

that George Roberts, who is a Creek freedman, and Betty
Roberts, his wife, who is a noncitizen of the Creek Nation, were the father and mother of said deceased allottee;
that George Roberts, joined by his wife, on December 23,
1905, sold and conveyed said lands by warranty deed to
F. W. Casner and E. J. Wilson, and Casner and Wilson
sold and conveyed said lands to the Oklahoma Trust Company; that the Oklahoma Trust Company was, by its
tenant Gilbert, in actual possession of the lands in controversy, and had been since January 26, 1911.

The case was tried to the court, and judgment rendered in favor of defendants. Motion for new trial was
timely filed and overruled, to which plaintiff duly excepted. This appeal is prosecuted to reverse said judgment.

There is but one vital question involved: Were the
restrictions removed from the alienation of said lands at
the time George Roberts and his wife sold and conveyed
same to Casner and Wilson? If the restrictions as to the
alienation of said lands were removed at the time of said
sale, said deed conveyed to Casner and Wilson the entire
interest in said land, and the deed of Casner and Wilson
conveyed to the Oklahoma Trust Company a good title to
said lands. We are of the opinion that at the time of said
sale by George Roberts and his wife to Casner and Wilson the restrictions upon the alienation of said lands had
been removed, and that therefore plaintiff in the court
below had no right, title, or interest in said lands.

In *Rentie et al. v. McCoy et al.*, 35 Okla. 77, 128 Pac.
244, it was held that under the Creek Supplemental
Agreement (Act Cong. June 30, 1902, c. 1323, secs. 6, 8,
16, 32 Stat. 500), and Act Cong. April 21, 1904, c. 1402

(33 Stat. at L. 204), the lands allotted to the father and mother on August 15, 1902, as heirs of their son, a duly enrolled Creek freedman, who died a minor June 2, 1899, passed to the father and mother, free from restrictions, and were alienable on April 8, 1905. Certainly the same reasoning applies whether the allotment was made before or after the death of the allottee.

In *United States v. Jacobs et al.*, 195 Fed. 707, 115 C. C. A. 507, it was held that:

"Act Cong. April 21, 1904, c. 1402, 33 Stat. 189-204, removing all restrictions on the alienation of lands of all the allottees of either of the Five Tribes not of Indian blood, except minors and except as to homesteads, was not limited to transfers by allottees, but extended as well to allottees' heirs."

In *Smith et al. v. Bell et al.*, 44 Okla. 370, 144 Pac. 1058, it is said:

"Where the language of a statute, as in the present case, is in general terms, and in words of the present tense, the statute will, as a general rule, be construed to apply not only to things and conditions existing at its passage, but will also be given a prospective interpretation, by which it will apply to such as come into existence thereafter. 36 Cyc. 1235; *Pacific Milling & El. Co. v. City of Portland*, 65 Or. 349, 133 Pac. 72, 76, 46 L. R. A. (N. S.) 363; *Carter v. Coharie Lbr. Co.*, 160 N. C. 8, 75 S. E. 1074; *Schus v. Powers-Simpson Co.*, 85 Minn. 447, 89 N. W. 68, 69 L. R. A. 887."

In *United States v. Jacobs, supra,* a case in which a member of the Creek tribe had died prior to allotment, and the lands to which he would have been entitled if living had been allotted to his heirs, it was said:

"The act of April 21, 1904, above quoted, says: 'And all restrictions upon the alienation of lands of all allot-

tees, except minors, are removed.' This was not a removal of the restriction upon alienation by the allottee only, but was general and applied to allottees or heirs of allottees, except in cases only of minors, and no claim is made that any of the heirs of Pearlie Jacobs were minors. Hence it is clear that there was no restriction upon the alienation by them."

In *Bradley et al. v. Goddard*, 45 Okla. 77, 145 Pac. 409, it is held:

"As to a certain portion of the lands of the Creek Nation, namely, those held by a certain class of citizens, to wit, allottees not of Indian blood, and (in the event of their death) their heirs, Congress, by the act of April 21, 1904 (chapter 1402, 33 Stat. 204), removed all restrictions upon alienation, thereby granting to such allottees or to such heirs power to convey all lands allotted to or inherited by them, except the portion designated as a homestead while the allottee lived, and the lands of minors during their minority."

The view herein expressed as to the homestead of said allottee is supported by that part of section 16 of the Supplemental Creek Agreement (32 U. S. Stat. at L. 500) which reads:

"The homestead of each citizen shall remain, after the death of the allottee, for the use and support of children born to him after May 25, 1901, but if he have no such issue then he may dispose of his homestead by will, free from the limitation herein imposed, and if this be not done the land embraced in his homestead shall descend to his heirs, free from such limitation, according to the laws of descent herein otherwise prescribed."

In the instant case the allottee died without issue. Upon his death, his heirs being adults, the lands ceased to be the lands of a minor, and restrictions thereon were removed by section 16 of the Supplemental Creek Agree-

ment, and said act of April 21, 1904, hereinbefore quoted. Consequently the deed of George Roberts and wife conveyed to Casner and Wilson title to said lands.

It follows that there is no merit in the motion for new trial, and that the court did not err in the judgment rendered.

We recommend that this cause be affirmed.

By the Court: It is so ordered.